# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                      Case No. 10-CR-283

**ADRIAN HIGGENBOTTOM**
        **Defendant.**

## SENTENCING MEMORANDUM

On three occasions, defendant Adrian Higgenbottom sold small amounts of crack cocaine to a confidential informant. On another occasion, he sold a different informant two handguns. Charged federally, he pleaded guilty to one count of crack distribution, see 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 851, and possession of a firearm as a felon, see 18 U.S.C. § 922(g)(1). I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth the reasons for my determinations.

## I. GUIDELINES

On the crack distribution count, defendant's pre-sentence report ("PSR") set a base offense level of 14, U.S.S.G. § 2D1.1(c)(13), based on a relevant conduct drug weight of 2.28 grams of cocaine base. On the firearm count, the PSR set a base offense level of 20, U.S.S.G. § 2K2.1(a)(4)(A), based on defendant's prior conviction for a controlled substance offense. As the two counts were unrelated, the PSR declined to group them under U.S.S.G. § 3D1.2 but

rather applied the multi-count adjustment under U.S.S.G. § 3D1.4. Application of § 3D1.4 produced 1 ½ units, resulting in a 1 level increase in the higher offense level, for a combined adjusted level of 21. Based on defendant's prompt guilty plea and acceptance of responsibility, the PSR subtracted 3 levels under § 3E1.1, for a final level of 18. Coupled with defendant's criminal history category of IV, level 18 produced an imprisonment range of 41-51 months. The parties agreed to these calculations, which I adopted.

## II. SECTION 3553(a)

### A. Sentencing Factors

Section 3553(a) instructs the court, in determining the particular sentence to be imposed, to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must comply with the statute's "overarching command" to impose a sentence that is sufficient, but not greater than necessary,

2

to comply with the purposes of sentencing set forth in § 3553(a)(2). Kimbrough v. United States, 552 U.S. 85, 101 (2007).

While the guidelines will serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination, considering the particular circumstances of the case, the types of sentences available, and the arguments of the parties. See Gall, 552 U.S. at 49-50. As the Supreme Court recently re-affirmed, the sentencing judge must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" Pepper v. United States, 131 S. Ct. 1229, 1239-40 (2011) (quoting Koon v. United States, 518 U.S. 81, 113 (1996)).

**B.     Analysis**

    **1.     The Offense**

On April 13, 2010, a confidential informant working with the police made a controlled buy of .7055 grams of crack from defendant for $100. On April 14, 2010, the same informant made another controlled buy of .7107 grams of crack for $100. On April 29, 2010, the informant made a third controlled buy of .8641 grams, again for $100. On November 18, 2010, a different informant arranged to purchase firearms from defendant, paying $600 for two handguns, a black holster, and a plastic bag containing twenty-five bullets. Defendant was, at the time of the sale, a convicted felon.

Defendant explained that he sold the guns and some drugs to try to make money, as

3

he did not have a steady job at the time. He stated that a friend, whom he bailed out of jail, gave him the firearms instead of paying him back; he didn't want the guns and needed money so he sold them.

## 2. The Defendant

Raised by a single mother in a part of Racine, Wisconsin known for gang and drug activity, defendant started getting into trouble with the law in his early teens.[1] Because his mother worked a lot to support the family, defendant and his siblings spent much of their time on the street with little supervision or direction. At the very young age of twenty-one, defendant's record at the time of sentencing in this case included juvenile adjudications for battery twice, marijuana possession, and weapon possession, and an adult conviction for possession with intent to deliver marijuana on which he served 1 year in prison. Defendant fathered a child while in his teens, whom he did not see very often, and owed about $4300 in support costs and arrears. He regularly used marijuana.

The record nevertheless suggested that defendant was a person with some potential, who needed assistance in redirecting his life.[2] He seemed to do well while serving 2 years of state extended supervision on his adult drug case, reporting as directed, testing negative for drugs, and participating in an employment assistance program. While detained in this case, he attended GED classes and got hired as an inmate laborer. He also expressed a desire for substance abuse treatment. Defendant's employment record in the community consisted

---

[1]Defendant never really knew his father, who was at the time of defendant's sentencing himself serving a prison term.

[2]As defendant's counsel indicated at sentencing, for whatever reason, defendant's family appeared to provide him with limited support.

4

primarily of work for temporary services, but it did appear that he made efforts to support himself legitimately. At sentencing, defendant spoke of his plans for the future and indicated that he wanted to relocate to a new environment, away from the negative influences of his past.

### 3.     The Sentence

The guidelines recommended 41-51 months in prison, and I agreed that a period of imprisonment was necessary to satisfy the purposes of sentencing in this case. Crack and firearm distribution cause serious harm to the community, requiring a prison term to provide just punishment. A prison sentence was also needed to protect the public and deter, as defendant had served time before, yet continued to offend, including engaging in some of the drug transactions in this case just prior to the discharge of his state extended supervision.

Defendant argued that criminal history IV overstated his record, but given the number of contacts he had compiled in his short life I found that argument difficult to accept. While two of his juvenile adjudications (for marijuana and weapon possession) accounted for 4 of his 8 criminal history points, he had two other juvenile adjudications (for battery) that did not score, along with an adult felony conviction, which scored 2 points, and the 2 point increase under U.S.S.G. § 4A1.1(d) because he committed part of the instant offense while on extended supervision.[3]

However, on consideration of the § 3553(a) factors, I did find a term somewhat below the guideline range sufficient. The crack sales involved here were very small, less than 1 gram each time, for $100 per sale. Treating the crack cocaine like powder cocaine, which courts may do under <u>Kimbrough</u>, 552 U.S. at 111, and its progeny, see <u>Spears v. United States</u>, 129

---

[3]I did agree that courts should be wary about placing too much emphasis on offenses a defendant committed in his early and mid-teens.

5

S. Ct. 840, 843-44 (2009); United States v. Corner, 598 F.3d 411, 415-16 (7th Cir. 2010) (en banc), the base level on that count would have been 12 rather than 14. Further, the record contained no indication of violence or weapon possession associated with the crack sales.

The firearm count was more serious, as selling guns in this fashion presents a danger to the community. Fortunately, this was a controlled buy operation, where no guns actually got onto the streets. On considering defendant's background and prior record, I did find that the U.S.S.G. § 2K2.1(a) base level of 20 somewhat overstated the seriousness of his conduct and the risk he posed with a gun. The predicate offense producing that level involved defendant's possession of a small amount of marijuana for sale, not any sort of violent conduct or misuse or possession of a weapon. As I discussed in United States v. Fogle, 694 F. Supp. 2d 1014, 1017-18 (E.D. Wis. 2010), the Sentencing Commission, without adequate explanation, decided to treat prior drug distribution cases, even those involving no violence or weapons, the same as crimes of violence in U.S.S.G. § 2K2.1 (a). The Commission may have based its decision on the fact that Congress, in passing the Armed Career Criminal Act, determined that greater sentences were called for when the defendant had prior convictions for certain crimes, including drug distribution, but guidelines that simply reflect congressional enactments do not represent an exercise of the Commission's proper institutional role and are accordingly entitled to less respect. See Kimbrough, 552 U.S. at 96-97. Where, as here, the offense level is increased from 14 to 20 based on a minor, prior drug case, § 2K2.1 (a) may overstate the risk that the defendant-felon poses with a gun. Fogle, 694 F. Supp. 2d at 1018.[4] I found that level

---

[4] Indeed, the Sentencing Commission has acknowledged, in the context of the career offender guideline, which employs the same definitions as U.S.S.G. § 2K2.1 (a), that treating minor drug cases the same as crimes of violence may result in an overstatement of the defendant's criminal risk. See U.S. Sentencing Commission, Fifteen Years of Guideline

6

20 somewhat overstated defendant's risk with a gun in this case.[5]

Finally, because I was required by statute to impose a supervised release term of at least 6 years on the drug count, I found a prison sentence below the range sufficient to protect the public and deter. Defendant would under this sentence be monitored for a substantial period, and if he violated the law in the future he would face even more prison time.

Under all the circumstances, I found a prison sentence of 24 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence, twice as long as his previous adult sentence, sufficed to promote respect for the law and deter, while acknowledging some of the mitigating aspects of the case discussed above. In order to assist defendant in transitioning into the community, hopefully in a new environment, and to provide additional deterrence and public protection, see 18 U.S.C. § 3553(a)(2)(B), (C) & (D), I also required that he serve 6 months in a halfway house as a condition of supervision. This resulted in a total period of confinement of 30 months.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months on each count running concurrently. Upon release, I required him to served a supervised release term of 6 years on the drug count and 3 years on firearm count. As conditions, I required him to participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse; repay the buy money expended by the police in the controlled buys,

---

Sentencing 133-34 (Nov. 2004).

[5]Defendant did have a juvenile case involving a weapon, which caused me some concern, so a significant prison sentence was necessary to impress upon him that he must stay away from guns, however he may come into possession. Prison was also needed to account for the aggravating fact of transfer of the weapons.

7

see United States v. Daddato, 996 F.2d 903, 905 (7th Cir. 1993); attend to his child support obligations; participate in the Cognitive Intervention Program, if available; and serve up to 6 months in a community correctional facility.

    Dated at Milwaukee, Wisconsin, this 24th day of June, 2011.

                            /s Lynn Adelman
                            _____
                            LYNN ADELMAN
                            District Judge